IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| EMMA G. DOUGLAS,<br><br>          Plaintiff,<br><br>vs.<br><br>FRANK J. BISIGNANO,<br>Commissioner of Social Security<br>Administration,<br><br>          Defendant. | CV 25-10-BLG-TJC<br><br><br>**ORDER** |

Plaintiff Emma G. Douglas ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of her claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  (Doc. 2.)  The Commissioner subsequently filed the Administrative Record ("A.R.").  (Doc. 7.)

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial of disability benefits and remand for an award of disability benefits, or alternatively for further administrative proceedings.  (Doc. 9.)  The motion is fully briefed and ripe for the Court's review. (Docs. 11, 12.)

1

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds the ALJ's decision should be **REVERSED** and **REMANDED** for further administrative proceedings.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits on July 31, 2020.  (A.R. 174-78.)  A hearing was held before Administrative Law Judge Michele Kelley (the "ALJ") on September 8, 2023.  (A.R. 41-86.)  On December 5, 2023, the ALJ issued a written decision finding Plaintiff not disabled.  (A.R. 21-36.)  Plaintiff requested review of the decision, and the Appeals Council denied Plaintiff's request.  (A.R. 7-12.)  Thereafter, Plaintiff filed the instant action.

## II.   LEGAL STANDARDS

### A.    Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is

not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). But even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion.

*Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

### B.        Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) the claimant suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).  A claimant must meet both requirements to be classified as disabled.  *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process.  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin*., 223 F.3d 968, 974 (9th Cir. 2000)).  The five steps are:

1.  Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.  Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3.  Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, then the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4.  Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

5.  Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step.  *Tackett v. Apfel*, 180 F.3d 1094, 1098, n.3 (citing 20 C.F.R. § 404.1512(d)).  At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience."  *Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

## III.  THE ALJ'S FINDINGS

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim.  First, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 21, 2020.  (A.R. 24.)

5

Second, the ALJ found that Plaintiff had the following medically determinable severe impairments: left knee patellar dislocation, status post arthroscopy; alcohol related neurodevelopmental disorder; generalized anxiety disorder; attention-deficit/hyperactivity disorder; and intellectual disability.  (A.R. 24.)

Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any one of the impairments in the Listing of Impairments.  (A.R. 25-28.)

Fourth, the ALJ concluded Plaintiff has the RFC to:

[P]erform light work as defined in 20 CFR 416.967(b): The claimant can lift and carry, push and pull 10 pounds frequently and 20 pounds occasionally.  She can walk and stand about 4 hours in an 8-hour workday with normal breaks.  Normal breaks defined as occurring every 2 hours with two breaks lasting at least 10 minutes and one break lasting at least 30 minutes.  The claimant can understand, remember, and carry out simple tasks.  She can maintain attention, concentration, persistence, pace for such tasks for 8-hour workdays and 40-hour workweeks.  She can tolerate interaction with supervisors and occasional coworkers and public.  She can tolerate usual work situations within the parameters of the hypothetical.  She can tolerate occasional changes in routine work settings and cannot work fast or fixed production rate or pace but can do goal oriented work.  The claimant should be shown how to perform each task she is required to perform.

(A.R. 28.)

The ALJ next found that Plaintiff had no past relevant work, but could perform other jobs, such as price marker, mail sorter, and routing clerk. (A.R. 34-35.) Thus, the ALJ found that Plaintiff was not disabled. (A.R. 36.)

## IV.   DISCUSSION

Plaintiff presents the following issues for review: (1) whether the ALJ properly considered her knee symptoms; (2) whether the ALJ improperly discounted the testimony and opinions of her treating psychologist and nurse practitioner; (3) whether the ALJ properly evaluated her subjective symptom testimony; (4) whether the ALJ properly discounted lay witness evidence; and (5) whether Plaintiff's impairments were properly incorporated into the vocational expert's hypothetical.

### A.   Consideration of Plaintiff's Knee Impairment

Plaintiff argues the ALJ erred by failing to chronologically review and consider the duration of her knee impairment. Specifically, Plaintiff argues the ALJ did not properly consider the chronology of two separate knee injuries she sustained. Plaintiff's argument is contradicted by the record.

First, although the ALJ did not specifically include every date of treatment in her decision, she accurately summarized the medical evidence in chronological order. (A.R. 29-30.) Second, the factual basis of Plaintiff's argument is flawed. Plaintiff contends that she re-injured her knee on January 9, 2022, that MRI

findings showed a lateral subluxation of the patella with mild edema interposed between the patellar tendon lateral femoral condyle, and that she had knee surgery in August 2023.  (Doc. 9 at 6, 9, 20.)  Plaintiff asserts, therefore, that "the second knee injury clearly lasted for 20 months."  (*Id.* at 20.)  But the record shows that Plaintiff's second knee injury occurred on February 1, 2023 not on January 9, 2022.[1]  (*See* A.R. 1148 (urgent care note dated 2/1/2023 stating Plaintiff dislocated her left knee at work and noting the incident "happened about 2 hours ago").)  Moreover, the MRI evidence Plaintiff cites was dated May 24, 2023, not January 2022.  (A.R. 1064-65 (treatment note dated 5/24/23 discussing results of MRI performed on 5/19/23).  Thus, the total duration from Plaintiff's re-injury (February 1, 2023) to her surgery (August 16, 2023) was less than 7 months, not the 20 months claimed by Plaintiff.

The Court, therefore, finds no error regarding the ALJ's consideration of Plaintiff's knee impairment.

### B.    Evaluation of Medical Opinion Evidence

Plaintiff next argues the ALJ improperly discounted the testimony and opinion of her treating psychologist, Brenda Roche, Ph.D, L.P., as well as the opinion of her treating nurse practitioner, Brittany Rich, A.P.R.N.  The

---

[1] It appears Plaintiff's counsel may have inadvertently transposed the date of the treatment note, for Plaintiff's date of birth, which is January 9, 2002.

Commissioner counters that the ALJ reasonably found the opinions of Dr. Roche and Ms. Rich unpersuasive.

Because Plaintiff applied for benefits after March 27, 2017, the ALJ was required to consider the medical evidence under the revised regulations governing the evaluation of medical opinion evidence.  20 C.F.R. §§ 404.1520c, 416.920c.  Under the revised regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ."  20 C.F.R. §§ 404.1520c(a); 416.920c(a).  Rather, the ALJ is directed to consider medical opinions according to the following factors: supportability, consistency, relationship with the claimant, specialization, and other factors such as the medial source's familiarity with other evidence in the claim or understanding of the disability program requirements.  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  The two most important factors are supportability and consistency, and the ALJ must explain how those factors were considered in the decision.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ is generally not required to explain how the remaining factors were considered, except when deciding among differing, yet equally persuasive opinions or findings on the same issue.  *Id.*  Under the new regulations the "ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

a.    Dr. Roche

Dr. Roche testified at the hearing before the ALJ and also provided written opinions addressing Plaintiff's mental limitations.  (A.R. 68-73; 532-572; 912-14.) At the hearing, Dr. Roche testified that she has completed two neuropsychological examinations of Plaintiff.  The first was completed in 2016, and the second after Plaintiff became an adult in 2021.  (A.R. 68.)  Dr. Roche also sees Plaintiff every other week for therapy.  (*Id.*)  Dr. Roche testified that due to Plaintiff's prenatal history and neuropsychological functioning diagnoses, she would not be able to maintain employment, even with a job coach and ongoing supports in place.  (*Id.*) Dr. Roche stated her opinion was based on the neuropsychological evaluation that she conducted.  (A.R. 69.)  Dr. Roche explained that Plaintiff's overall attention, as well as her learning and memory, are impaired.  (*Id.*)  As a result, Plaintiff is unable to remember tasks from day-to-day, and does not understand instructions being given to her.  (*Id.*)  Dr. Roche further explained that Plaintiff's social interactions with coworkers are very poor.  (A.R. 70.)  Dr. Roche stated Plaintiff can present as typically developing, but she's very inconsistent in her abilities, which is a result of prenatal exposure to alcohol.  (A.R. 71.)  Dr. Roche estimated that Plaintiff's social and emotional functioning is at an 8 to 11-year-old level. (A.R. 70.)  Dr. Roche opined that Plaintiff was not competent to make financial, medical or legal decisions for herself.  (A.R. 71.)

10

Dr. Roche completed extensive neuropsychological testing of Plaintiff between March and April 2021. (A.R. 532-579.) The testing occurred over a period of four sessions. (A.R. 532.) Dr. Roche noted that Plaintiff was easily distracted but could be redirected, struggled with inattention, impulse control, and was consistently fidgety and restless. (A.R. 536.) The testing showed Plaintiff's general cognitive ability was within the borderline range of intellectual functioning, with a full-scale IQ of 73. (A.R. 537.) Plaintiff also generally performed poorly on other aspects of the testing. For example, her ability to sustain attention, concentrate, and exert mental control was in the "extremely low range," with Plaintiff performing better than only 2% of her peers in that area. (*Id.*) On reading ability, her sentence reading fluency was equivalent to an individual in grade 6.6, and reading comprehension was equivalent to grade 4.3. (A.R. 538.)

The neuropsychological evaluation also rated Plaintiff on a variety of functional categories. (A.R. 551-552.) Limitations in Plaintiff's understanding and memory were identified as moderate and marked. (A.R. 551.) Her impairment in sustained concentration and persistence was rated as mostly marked. (*Id.*) Plaintiff's limitations in social interaction were rated from moderate to extreme, and her limitations in adaptation were considered marked. (*Id.*) Dr. Roche opined Plaintiff's mental impairments would interfere with her ability to

11

work on a regular and sustained basis at least 20% of the time.  (A.R. 552.)  Dr. Roche also opined Plaintiff would miss up to 10 days of work per month due to her mental impairments.  (*Id.*)  Finally, Dr. Roche stated Plaintiff would not be capable of holding down full-time employment.  She opined Plaintiff was likely to be able to hold a part-time job, if substantial supports were in place.  (*Id.*)

Dr. Roche also provided a written opinion dated July 27, 2023, addressing Plaintiff's mental limitations.  (A.R. 912-914.)  Dr. Roche stated that Plaintiff's conceptual skills have lagged behind those of her peers, and her academic skill development was delayed.  (A.R. 912.)  Dr. Roche also noted Plaintiff's social judgment and decision-making abilities are very limited, and she has some maladaptive behavior that causes her social problems.  (*Id.*)  Dr. Roche again rated Plaintiff's mental limitations in four functional areas.  (A.R. 913-14.)  Plaintiff's limitations were rated as mostly marked across all areas.  (*Id.*)  Dr. Roche repeated her opinion that Plaintiff's mental impairments would interfere with her ability to work at least 20% of the time, and would cause her to miss 10 days of work per month.  (A.R. 914.)  She also reiterated that she believed Plaintiff would be unable to work a regular full-time job.  (*Id.*)  As support of this opinion, she cited the fact that Plaintiff had been unable to maintain part-time employment in three different settings, even with the support of a job coach.  (*Id.*)

In evaluating the medical evidence in this case, the ALJ considered Dr. Roche's opinion, but found it was "not persuasive."  (A.R. 34.)  In doing so, the ALJ substantively addressed the supportability and consistency factors.  But the ALJ's findings as to supportability and consistency are not supported by substantial evidence.

The ALJ determined Dr. Roche's opinions were not supported by her therapy treatment notes because Dr. Roche's mental status examinations documented only mild findings.  (A.R. 31, 34.)  An ALJ may discount medical opinions that are inconsistent with or unsupported by the medical provider's own clinical findings.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Where the ALJ goes astray here, however, is that mental status evaluations are inherently different from the neuropsychological testing upon which Dr. Roche's opinions are based.

Neuropsychological examinations "test very discrete areas of functioning – verbal comprehension and expression, visuoperceptual and visual-spatial reasoning, mental manipulation of auditory information, mental and motor processing speed, psychomotor processing speed, and visual confrontation."  *Rodney S. v. Kijakazi*, 2021 WL 3418858, *10 (N.D. Ill. Aug. 5, 2021).  The purpose of a neuropsychological examination is to diagnose neurodevelopmental, neurodegenerative, and acquired orders of brain function, "and is not a mental

health evaluation or treatment service." *Id.* A typical neuropsychological evaluation, like the evaluation Dr. Roche completed, entails taking an extensive history, and administering comprehensive testing and requires intensive data analysis. *Id.* Mental status examinations, in contrast, are "a much less involved tool geared toward mental health rather than the functioning of the brain." *Id.* at 11. They are a tool that aids providers in making psychiatric diagnoses. *Id.*

Accordingly, the mental status examinations could not, by themselves, negate the otherwise sound neuropsychological testing. *Rodney S.*, 2021 WL 3418858 at *11 (holding ALJ's finding that the more comprehensive neuropsychological testing was inconsistent with the mental status examinations "is unsupported and wrong"). Thus, it was error for the ALJ to discount Dr. Roche's opinions stemming from her neuropsychological testing of Plaintiff in favor of the mental status examinations because they perform different functions evaluate different metrics.

Moreover, the fact that Plaintiff generally presented well in therapy simply does not undermine Dr. Roche's findings regarding her functional abilities in understanding and memory, concentration, adaptation, etc. *See Rodney S.*, 2021 WL 3418858 at *11 (stating there was "no disconnect" between the plaintiff's low intelligence results on testing and his largely normal results during mental health screenings).

14

The ALJ also found Dr. Roche's reliance on Plaintiff's failed work attempts to support her assessment of moderate to extreme limitations was not supported by the record.  (A.R. 34.)  The ALJ stated Plaintiff ended her jobs due to her knee impairment, and not due to problems with the tasks at those jobs.  (*Id.*)  The ALJ's finding in this regard is not supported by a fair and full reading of the record.

In discussing the reason Plaintiff left her jobs, the ALJ selectively cited the record to support her finding that the only reason Plaintiff's jobs ended was her knee impairment.  For example, the ALJ characterized Plaintiff's testimony as stating, "that she had no problem with the tasks at these jobs."  (*Id.*)  But reading the hearing testimony, Plaintiff also stated that communication issues contributed to her leaving her jobs.  (*See* A.R. 56 (explaining she quit her job at Perkins for multiple reasons, including because one of the managers "was very disrespectful towards me," her "knee "gave out once," and "there were just a lot of communication issues"); 65 (explaining that the non-physical reasons she had difficulty doing her jobs was "mostly communication and the stuff that they were asking me to do I did not know what they were meaning.  I told them that I was a hands-on and they were not understanding that.  So, I would mostly have to say communication was an issue."); 80 (testifying she was fired from a daycare job due to using her phone, unrelated to knee injury).  Therefore, while Plaintiff may have been able to perform the tasks of her job, she testified to having had other

difficulties at work.  Thus, the ALJ does not accurately summarize Plaintiff's testimony.

Further, the ALJ disregarded multiple other records that indicated Plaintiff had communication issues and left jobs for reasons unrelated to her knee problems. (*See e.g.* A.R. 311 (job coach letter explaining Plaintiff's first job "was difficult for her to maintain due to a knee injury, *and difficulties with interpersonal skills with fellow employees*"; her second job was "emotionally difficult as well as cognitively difficult due to her needing to memorize different rules and procedures"; in her third job she "struggled with inter-office relationships due to her emotional immaturity"; and in her fourth job "she struggled a bit with inter-office relationships again, but also reinjured her knee"); 757 (noting Plaintiff "was working 2 jobs but recently had a stressor at her 1 job where she was being treated poorly and had to leave that job and is now only working 1 part-time job"); 760 (noting "Emma quit her job as her boss was not able to provide the accommodations needed and it was not a good fit."); 765 (noting Plaintiff "is having a hard time communicating with her boss.  She gave her boss the letter we wrote up last week outlining her disabilities and requesting accommodations"); 784 (noting Plaintiff "reported continuing to have struggles communicating with her boss at her job"); 895 (noting Plaintiff "is having a few problems at work that are interpersonal"); 1038 (noting Plaintiff "talked about making a mistake at work

16

and that a coworker called her a 'retard'"); 1122 (noting Plaintiff "was fired from her job saying she was scrolling on her phone and social media.  She stated that her job coach thinks daycares may not be a good fit for her."); 1261 (noting Plaintiff "reported that she was written up at work today and we discussed how she should handle this.").

Therefore, while it is accurate that Plaintiff's knee injury at times interfered with her ability to work, it was not accurate that the knee injury was the only reason she left all her jobs.  An ALJ is not permitted to cherry pick isolated evidence from the record but must instead consider the record evidence as a whole. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

In light of the ALJ's selective consideration of the record, and incorrect comparison of the neuropsychological assessment and mental status examinations, the Court finds the ALJ erred in considering Dr. Roche's opinion.  Further, the ALJ's error cannot be deemed harmless because if the ALJ had properly credited Dr. Roche's opinions, the record suggests Plaintiff could have been found disabled. (*See* A.R. 83-84 (vocational expert opined that if hypothetical individual would be off task at least 15 percent of an eight-hour work day excluding normal breaks, or would miss more than one day of work per month, the person would not be able to perform full-time work in the national economy.)  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006).

17

b.    Ms. Rich

Ms. Rich provided a written opinion dated August 8, 2023, stating that in her professional opinion, Plaintiff "would benefit greatly from SSI approval.  Emma will struggle to make a sustainable living wage and support herself independently without it."  (A.R. 915.)   Ms. Rich further stated that Plaintiff needed access to other programs that she could only qualify for if she was approved for SSI disability.  (*Id.*)

The ALJ considered Ms. Rich's opinion, but did not find it persuasive.  (A.R. 34.)  The ALJ noted Ms. Rich did not provide support for her assessment "within the definition of disability, which is the inability to perform any substantial gainful activity in the national economy due to physical or mental impairment." (*Id.*)  The ALJ's conclusion is supported by the record.  Ms. Rich's opinion did not address Plaintiff's functional limitations, but rather only opined why it would be helpful for Plaintiff to have SSI.  A statement that a person is disabled or unable to perform regular or continuing work is an issue reserved to the Commissioner.  20 C.F.R. § 416.920b(c)(3)(i).  As such, Ms. Rich's statement that disability would help Plaintiff is "inherently neither valuable nor persuasive," and therefore, the ALJ was not required to "provide any analysis about how we considered such evidence." *Id.*

/ / /

18

## C.    Evaluation of Subjective Symptom Testimony

Plaintiff next argues that the ALJ improperly discounted her subjective symptom testimony regarding her limitations.  The Commissioner asserts the ALJ's interpretation of Plaintiff's testimony was reasonable and supported by the record.

A claimant's testimony is analyzed in two steps.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.* Second, if there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ provides "specific, clear and convincing reasons" for doing so.  *Id.*  "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick*, 157 F.3d at 722 (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  As noted by the Ninth Circuit, "[t]his is not an easy requirement to meet.  The clear and convincing standard is the most

19

demanding required in Social Security cases." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)).

To assess a claimant's subjective symptom testimony, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603–04 (9th Cir. 1989). An ALJ may also take the lack of objective medical evidence into consideration. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms. Therefore, the ALJ was required to cite specific, clear, and convincing reasons for rejecting Plaintiff's subjective testimony about the severity of her symptoms. The Court finds the ALJ failed to do so.

The ALJ discounted Plaintiff's statements about the effect her mental limitations had on her ability to work because the ALJ found Plaintiff's prior jobs ended due to her knee injury, not due to mental impairments. (A.R. 32.) As discussed above, however, the ALJ erred in finding that Plaintiff left her jobs due only to her knee injury or other non-impairment related reasons.

20

The ALJ's other findings, however, are generally supported.  The ALJ noted, for example, that Plaintiff's mental health conditions have been conservatively treated with medication, and are well controlled.  (A.R. 30.)  The ALJ also noted Plaintiff's daily activities and other activities were inconsistent with her allegations of severe mental impairments.  (A.R. 31-32.)  These findings are supported by the record. (*See* A.R. 361 (noting Plaintiff's anxiety and attention deficit/hyperactivity disorders well controlled and Plaintiff was consistent with her medication); 215-19 (function report indicating Plaintiff is able to do household chores, prepare simple meals, watch a movie and finish it, attend church, socialize in person, by phone, text, and video chat); 258-64 (same); 604, 623, 777, 1016, 1038 (noting Plaintiff is able to participate in Special Olympics and go out with her friends).

Generally, an ALJ's error in citing invalid reasons for discounting a Plaintiff's testimony is harmless when the ALJ provides other valid reasons. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (superseded by statute on other grounds) ("ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record.").

Here, however, this matter must be remanded due to the ALJ's error regarding Dr. Roche's opinion.  Because the ALJ's error regarding Dr. Roche is

intertwined with her consideration of Plaintiff's testimony regarding the reasons she left her jobs, the Court finds the ALJ should also reconsider Plaintiff's symptom testimony.

### D.   Consideration of Lay Witness Opinions

Plaintiff argues the ALJ failed to discount the lay witness opinions of her teacher Faye McNeil and job coach Jenn Asher with the requisite specificity. The Commissioner argues that under the revised regulations, the ALJ was not required to specifically address the lay witness evidence.

It remains an open question whether ALJs are still required to specifically address lay witness evidence under the revised regulations. Previously, the Ninth Circuit held that "[l]ay testimony as to a claimant's symptoms is competent evidence which the [ALJ] must take into account, unless he expressly determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In March 2017, however, new regulations governing how ALJs are to consider and articulate their consideration of medical opinions took effect. The revised regulations state ALJs "are not required to articulate how [they] considered evidence from nonmedical sources using the requirements" that apply to medical opinions. 20 C.F.R. § 416.920c(d).

22

In March 2025, the Ninth Circuit overruled the "germane reasons" standard for rejecting lay witness evidence, finding the Circuit's precedent was no longer in accord with the revised regulations. *Hudnall v. Dudek*, 130 F.4th 668, 671 (9th Cir. March 7, 2025). The Ninth Circuit held that for claims filed on or after March 27, 2017, "ALJs need not explain their reasons for discounting evidence from nonmedical sources, such as the claimant's friends and family." *Id.*

A month later, however, the decision was vacated and withdrawn. *Hudnall v. Dudek*, 133 F.4th 968 (9th Cir. April 7, 2025). Subsequently, on May 13, 2025, the Ninth Circuit issued a new opinion specifically declining to address whether the "germane reasons" standard has been overruled by the revised regulations. *Hudnall v. Dudek*, 2025 WL 1379101, *2 (9th Cir. May 13, 2025) ("We need not decide whether those regulations constitute 'intervening higher authority' that is 'clearly irreconcilable' with our precedent, because any error by the ALJ in not giving a germane reason for rejecting [the lay witness's] testimony was harmless.").

In light of the unsettled question, the Court will continue to apply the "germane reasons" standard. *See e.g. Tiffany Y. v. Comm'r of Soc. Sec.*, 2026 WL 523005, *6 (W.D. Wash. Feb 25, 2026) (holding that without clarification from the Ninth Circuit whether an ALJ must provide germane reasons for rejecting law evidence under the revised regulations, "this Court continues to find no basis for

the Commissioner's assertion that an ALJ need not articulate why the ALJ rejected relevant lay witness evidence."); *Tonyette O. v. Bisignano*, 2025 WL 1455958, *4-5 (C.D. Cal. May 21, 2025) (assuming the "germane reasons" standard still applied, and finding the ALJ provided sufficient reasons for discounting evidence); *Connelly v. Colvin*, 2024 WL 5040994, at *2 (9th Cir. Dec. 9, 2024) ("Assuming that ALJs must still, after the 2017 regulation amendments, offer reasons "germane to each witness" in order to reject lay evidence, . . . the ALJ satisfied that obligation.").

Under presently binding Ninth Circuit authority, the ALJ must either take the lay witness testimony into account, or expressly determine to disregard it and, in doing so, give germane reasons. *Nguyen*, 100 F.3d at 1467. Competent lay witness testimony "*cannot* be disregarded without comment." *Id.* (emphasis in original). The ALJ is not, however, required to discuss every witness's testimony on an individualized, witness-by-witness basis. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). "[I]f the ALJ gives germane reasons for rejecting the testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.*

Here, the Court has determined remand is necessary for the ALJ to reconsider the opinion of Dr. Roche and Plaintiff's subjective symptom testimony. The Court notes that the ALJ rejected the lay opinion of Plaintiff's job coach Jenn

24

Asher for the same faulty reasons that the ALJ relied on to reject Dr. Roche and Plaintiff in relation to why Plaintiff left her prior jobs. Accordingly, the ALJ's consideration of Ms. Asher's lay opinion is not supported by sufficient germane reasons.

Regarding the ALJ's consideration of teacher Faye McNeil's opinion, however, the Court finds the ALJ did not error. The ALJ accurately summarized the opinion, and found it was inconsistent with Plaintiff's ability to graduate from high school. (A.R. 31.) This reason was sufficiently germane for discounting Ms. McNeil's opinion. *Hudnall*, 2025 W: 1379101, at *3 (Graber, concurring) ("The 'germane reasons' requirement is not onerous.").

### E.   Vocational Expert's Hypothetical

Finally, Plaintiff argues the ALJ failed to incorporate all her impairments and limitations into the hypothetical questions posed to the vocational expert. The Commissioner did not address the substance of Plaintiff's argument.

Hypothetical questions posed to the vocational expert must set out all the claimant's limitations and restrictions. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d at 756 (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion

25

that the claimant has a residual working capacity has no evidentiary value. *Embrey*, 849 F.2d at 422.

As discussed above, the Court has determined the ALJ erred in considering Dr. Roche's opinions, discrediting Plaintiff's subjective symptom testimony, and in considering the lay opinion of Ms. Asher. These errors may have infected the hypothetical the ALJ relied on, and in turn, the ALJ's determination that Plaintiff could perform work. Therefore, the ALJ's determination at step five is not supported by substantial evidence.

### F.     Remand or Reversal

"[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Reddick v. Chater*, 157 F.3d at 728. If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

26

The Court finds remand for further proceedings is appropriate.  On remand, the ALJ shall properly consider Dr. Roche and Ms. Asher's opinions, reconsider Plaintiff's credibility, and reassess whether Plaintiff can perform other work in the national economy based upon a hypothetical to the vocational expert that incorporates all the limitations supported by the record.

## V.    CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision be **REVERSED** and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 30th day of March, 2026.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge